Michael J. Gomez (State Bar No. 251571)
  mgomez@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
  gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff CATHAY BANK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11422-ES |
| NELSON YEN, | Chapter 7 |
| Debtor. | Adversary No. |
| CATHAY BANK, a California banking corporation, | **COMPLAINT BY CATHAY BANK FOR:** |
| Plaintiff, | 1. **Determination that Debt is Non-Dischargeable Under 11 U.S.C. § 523(a)(2)(A);** |
| v. | 2. **Determination that Debt is Non-Dischargeable Under 11 U.S.C. § 523(a)(2)(B);** |
| NELSON YEN, an individual, | 3. **Determination that Debt is Non-Dischargeable Under 11 U.S.C. § 523(a)(4);** |
| Defendant. | 4. **Determination that Debt is Non-Dischargeable Under 11 U.S.C. § 523(a)(6);** |
| | 5. **Denial of Debtor's Discharge Under 11 U.S.C. § 727(a)(2)(A);** |
| | 6. **Denial of Debtor's Discharge Under 11 U.S.C. § 727(a)(2)(B);** |
| | 7. **Denial of Debtor's Discharge Under 11 U.S.C. § 727(a)(3);** |
| | 8. **Denial of Debtor's Discharge Under 11 U.S.C. § 727(a)(4)(A); and** |
| | 9. **Denial of Debtor's Discharge Under 11 U.S.C. § 727(a)(5).** |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Plaintiff Cathay Bank complains and alleges as follows:

**JURISDICTION AND VENUE**

1.    Defendant and Debtor Nelson Yen ("Nelson") filed a voluntary chapter 7 petition for relief under Title 11 of the United States Code on June 2, 2021, commencing the instant bankruptcy case.

2.    This Court has jurisdiction over the subject matter of this Adversary Complaint pursuant to 28 U.S.C. §§ 1334 and 157.  The matters alleged in this Adversary Complaint are "core" matters pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).  Cathay consents to this Court's entry of final judgment in this matter, as this Court has the power to enter final orders regarding such matters.

3.    The venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**PARTIES**

4.    The following is a description of the relevant parties involved in the facts forming the basis of this Complaint.

**The Bank**

5.    Plaintiff Cathay Bank ("Cathay") is a banking corporation organized under the laws of the State of California and authorized by the California Department of Financial Protection and Innovation, to transact commercial banking business in the State of California.

**The Debtor and His Companies**

6.    Cathay is informed and believes, and thereon alleges, that Nelson is an individual residing in Yorba Linda, California in the County of Orange, California.  Cathay is informed and believes, and thereon alleges, that Nelson held a 40% membership interest in Gryphon Mobile Electronics LLC ("Gryphon") and is its CEO and managing member.

7.    Cathay is informed and believes, and thereon alleges, that Nelson disclosed on his bankruptcy schedules that he owns the following interests in non-debtor entities:  (a) Spacekey (USA) Inc. ("Spacekey") (40%); (b) Dreamwave Audio (USA) LLC ("Dreamwave") (30%); (c) Saturn Technology Group LLC ("Saturn Technology") (100%); and (d) Saturn Group International LLC ("Saturn Group" and collectively with Gryphon, Spacekey, Dreamwave, Saturn

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Technology, the "Disclosed Entities") (26%).  As of the date of filing this Adversary Complaint, the Disclosed Entities are each designated as "active" on the Secretary of State's website.

8.      Cathay is informed and believes, and thereon alleges, that Nelson did not originally disclose on his bankruptcy schedules that he owns the following interests in non-debtor entities: (a) Right Connection Electronics, Inc. ("Right Connection") (15%) and (b) China Gate Restaurant ("China Gate" and collectively with Right Connection, the "Undisclosed Entities" and together with Disclosed Entities, the "Entities") (7%).  However, one business day before Cathay's deadline to file this Complaint, Nelson amended his schedules to disclose:  Nelson's 15% ownership interest in "Right Connections Corp" which he states is "Suspended and defunct," and a 7% interest in "China Gate Restaurant" which he states is "closed and defunct."

**The Debtor's Family Members**

9.      Cathay is informed and believes, and thereon alleges, that Carol Ko aka Dinghui Yen ("Carol") is Nelson's biological sister and the CFO of Gryphon as well as a 15% membership interest holder in Gryphon.  Cathay is informed and believes, and thereon alleges, that Carol has a degree in accounting and statistics from Shih Chien University in Taipei City, Taiwan.

10.     Cathay is informed and believes, and thereon alleges, that Andrew Yen ("Andrew") is Nelson's biological son and the Vice President of Gryphon as well as a 13.5% membership interest holder in Gryphon.  Cathay is also informed and believes, and thereon alleges, that Andrew is the managing member and sole owner of Toyco LLC ("Toyco"), a California limited liability company formed on February 1, 2019.

11.     Cathay is informed and believes, and thereon alleges, that Vincent Yen ("Vincent") is Nelson's biological brother.

12.     Cathay is informed and believes, and thereon alleges, that Yanhong Zhou ("Yanhong") is Nelson's wife.  Cathay is informed and believes, and thereon alleges, that Nelson married Yanhong on or about August of 2016.  Cathay is informed and believes, and thereon alleges, that Yanhong has a daughter who is Nelson's step-daughter ("Daughter").

13.     Cathay is informed and believes, and thereon alleges, that Mei Mei Lou ("Mei Mei") is Nelson's ex-wife.  Cathay is informed and believes, and thereon alleges, that Mei

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Mei and Nelson were divorced in or about 1989 or 1990, and that there is no domestic support order in place for alimony or any other form of domestic support.

## GENERAL ALLEGATIONS

14.     The following factual allegations form the basis of Cathay's claims for relief against Nelson.

### Cathay's Loan to Gryphon and Nelson's Guaranty

15.     This matter stems from a $900,000.00 working capital loan ("Loan") originally made on or about May 25, 2012, by Cathay to Gryphon.  The Loan was evidenced by, among other things, a business loan agreement ("Loan Agreement") and promissory note ("Note") with an approximate one-year maturity.  The Loan is also evidenced by a commercial security agreement ("Security Agreement") whereby Gryphon granted Cathay a security interest in all of its tangible and intangible personal property assets, existing and after-acquired as well as proceeds thereof (collectively, "Collateral").  Cathay perfected its first-priority lien against the Collateral by filing a UCC-1 financing statement with the California Secretary of State on June 6, 2012, assigned filing number 12-7316278431 ("UCC-1").  Cathay continued its UCC-1 on April 27, 2017, by filing a continuation statement with the California Secretary of State, assigned filing number 17-75825718.

16.     Nelson guaranteed the Loan by entering into one or more continuing, unlimited commercial guaranties of all outstanding indebtedness owed by Gryphon to Cathay ("Guaranty" and collectively with the Loan Agreement, Note, Security Agreement, and amendments and modifications thereto, the "Loan Documents").

17.     Subsequently, Cathay and Gryphon entered into agreements and promissory notes, which modified and extended the Loan, including its maturity to, ultimately, November 30, 2020, and increasing the principal amount of the Loan.

### Gryphon's Financial Problems

18.     Cathay is informed and believes, and thereon alleges, that as early as 2017, but perhaps earlier, Gryphon started experiencing financial problems.  In particular, its sales of mobile electronics and portable power bank technology began to decline precipitously due to market

changes and has not returned its pre-2017 levels.  In addition, Cathay is informed and believes, and thereon alleges, that Gryphon may have been being impacted by counterfeit sales of its merchandise.

### Notice of Default

19.    On February 5, 2021, Cathay provided notice of defaults of the Loan, including a maturity date default, to Gryphon to the care of Nelson.

20.    On April 5, 2021, Cathay sued Nelson and Gryphon in Los Angeles County Superior Court, commencing case number 21PSCV00276.

### Nelson Files Chapter 7

21.    On June 2, 2021, Nelson filed a voluntary chapter 7 bankruptcy petition, commencing the instant bankruptcy case.

22.    Nelson listed Cathay as his only creditor and as being owed $900,000.00.

### Nelson's False Bankruptcy Schedules

23.    Cathay is informed and believes, and thereon alleges, that Nelson omitted from his bankruptcy schedules the Undisclosed Entities, as well as other transfers of assets from his Statement of Financial Affairs, including, but not limited to, a gold Rolex watch, intentionally for the purpose of concealing assets from his chapter 7 bankruptcy estate.  Only after Cathay conducted an investigation, including a Fed. R. Bankr. P., Rule 2004 examination, did Nelson disclose his interests in the Undisclosed Entities.  Only one business day before the deadline for filing this Complaint did Nelson amend his schedules to reflect his interests in the Undisclosed Entities.

### Nelson's False Personal Financial Statements

24.    Cathay is informed and believes, and thereon alleges, that as early as 2017, but perhaps earlier, at a time when Gryphon and/or Nelson were experiencing financial problems and/or were transferring assets and/or actively concealing assets and transfers of assets of Gryphon, Nelson, and Nelson's Entities, to family members and/or entities owned by family members, Nelson began providing Cathay with false personal financial statements for the purpose

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   of concealing his financial condition, assets, and asset-transfers from Cathay and preventing

2   Cathay from immediately exercising its remedies under the Loan Documents.

### Nelson's Vanishing Personal Property

4   25.   More specifically, Cathay is informed and believes, and thereon alleges, that

5   Nelson, working in concert with Carol, conspired to deceive Cathay by providing false financial

6   statements, including, but not limited to the 2019 and 2020 personal financial statements ("PFSs").

7   26.   On July 29, 2019, Nelson signed an individual financial statement ("2019 PFS")

8   reflecting, among other things, that he had $500,000.00 in cash, $1,600,000.00 in stocks and

9   bonds, a $510,000.00 receivable, and $150,000.00 in personal property assets.  The next year, on

10   November 19, 2020, Nelson signed an individual financial statement ("2020 PFS") reflecting,

11   among other things, that he had $200,000.00 in cash, $1,600,000.00 in stocks and bonds, a

12   $510,000.00 receivable, and $150,000.00 in personal property assets.  About seven months later,

13   Nelson filed chapter 7 bankruptcy, listing his total personal property assets at only $22,712.58.

14   27.   Cathay is informed and believes, and thereon alleges, that the $1,600,000.00 in

15   stocks and bonds listed on the individual financial statements that Nelson provided Cathay in the

16   lead-up to Nelson's filing bankruptcy were materially false and/or Nelson's bankruptcy schedules,

17   which reflect $0.00 valuation for his ownership interests in the Disclosed Entities, is materially

18   false and fraudulent.  Cathay is informed and believes, and thereon alleges, that Nelson concealed

19   the Undisclosed Entities, which include valuable operating entities, for the purpose of defrauding

20   Cathay and the chapter 7 estate.

### Nelson Conceals Value from Cathay and the Estate

22   28.   Cathay is informed and believes, and thereon alleges, that the $300,000.00 cash

23   differential between the 2019 PFS (reflecting $500,000.00 in cash) and 2020 PFS (reflecting

24   $200,000.00 in cash) either never existed, or alternatively, is composed, in part or in whole, of

25   cash amounts transferred by Nelson to Co-Conspirators (defined in ¶ 33 and that definition is

26   incorporated by this reference), including Vincent for the purpose of developing other businesses,

27   including a baby monitor and a translation machine.  Cathay is informed and believes, and thereon

28   alleges, that in or around 2018 or 2019, while Gryphon was experiencing significant financial

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    difficulties, Nelson and Vincent agreed that Nelson would provide cash transfers to Vincent for

2    the purpose of pursuing other businesses, including developing and bringing to market a baby

3    monitor product and a translation machine.  Cathay is informed and believes, and thereon alleges,

4    that Nelson and Vincent agreed that they would share in the profits of these ventures equally.

5         29.    Cathay is informed and believes, and thereon alleges, that some of these businesses

6    for which Nelson had provided cash infusions became profitable.  In particular, Cathay is

7    informed and believes, and thereon alleges, that the baby monitor and translation machine

8    products were, in fact, developed, marketed, and are currently generating net profits.  Cathay is

9    also informed and believes, and thereon alleges, that these businesses own valuable intellectual

10    property, including registered trademarks.  In addition, Cathay is informed and believes, and

11    thereon alleges, that Nelson either receives and/or is entitled to receive profits from sales

12    generated from these businesses.

13         30.    Cathay is informed and believes, and thereon alleges, that Nelson has concealed

14    from Cathay his profits and cash generated from these business ventures and that Nelson has also

15    concealed these assets from the chapter 7 trustee and the estate.  Cathay is informed and believes,

16    and thereon alleges, that Nelson's filing chapter 7 bankruptcy constituted part of this scheme to

17    conceal from Cathay and the chapter 7 trustee profits generated from other businesses ventures of

18    Nelson.

19    **Nelson's Fraudulent Transfers and Concealment of Assets from Cathay**

20         31.    Cathay is informed and believes, and thereon alleges, that as early as 2017, but

21    perhaps earlier, when Gryphon and/or Nelson were experiencing financial problems, Nelson began

22    transferring his and his Entities' money and property as well as the Collateral to his family

23    members, and companies owned by himself (including the Entities) and/or his family members,

24    for the purpose of concealing his assets and the Collateral from Cathay and preventing Cathay

25    from immediately exercising its remedies under the Loan Documents, at a time when Nelson and

26    Gryphon was insolvent or rendered insolvent by such transfers.  Cathay is informed and believes,

27    and thereon alleges, that such transfers were made as a scheme by Nelson and others to hinder,

28

1  delay, and/or defraud Cathay and prevent repayment of the Loan and/or the obligations supported

2  by Nelson's Guaranty.

3      32.    Cathay is informed and believes, and thereon alleges, that within four years prior to

4  Nelson filing chapter 7 bankruptcy, Nelson made transfers of his personal cash and other assets, as

5  well as the assets of his Entities, at a time when he was insolvent or rendered insolvent by such

6  transfers, to or for the benefit of his family members and/or entities owned by them, including, but

7  not limited to, (a) tuition payments for the benefit of his Daughter, (b) payments to his wife,

8  Yanhong, (c) cash support payments, car payments and other transfers to his ex-wife, Mei Mei,

9  (without a domestic support order for same), and (d) transfers to or for the benefit of his son,

10  Andrew and/or entities owned by Andrew, including Toyco, in amounts according to proof.

11  Cathay is informed and believes, and thereon alleges, that such transfers were made as a scheme

12  by Nelson and others to hinder, delay, and/or defraud Cathay and prevent repayment of the Loan

13  and/or the obligations supported by Nelson's Guaranty.

14      **Nelson and Insiders Conspire to Conceal and Transfer Nelson's Assets**

15      33.    Cathay is informed and believes, and thereon alleges, that Nelson coordinated with

16  certain of his family members and Entity insiders, including, but not limited to, Carol, Andrew,

17  Vincent, and perhaps other members of Nelson's family and insiders of Nelson's Entities

18  (collectively, "Co-Conspirators") and hatched a scheme to hinder, delay, and/or defraud Cathay.

19  Such scheme involved, among other things, a plot to transfer and/or conceal Nelson's assets and

20  Gryphon's assets.  Nelson and the Co-Conspirators worked together for the purpose of extracting

21  value, assets, including cash and other assets, from Nelson and his Entities, for their own benefit.

22  Nelson and the Co-Conspirators engaged in this scheme for the express purpose of preventing

23  Cathay from collecting its Loan and guaranty obligations from Gryphon and Nelson and to enrich

24  themselves at Cathay's expense.  Nelson and the Co-Conspirators specifically intended and/or

25  knew with substantial certainty that this scheme, and their actions pursuant to this scheme, would

26  cause harm to Cathay by preventing Cathay from collecting the outstanding Loan and Nelson's

27  guaranty obligations.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

34.    Cathay is informed and believes, and thereon alleges, that Nelson's chapter 7 bankruptcy and his obtaining a discharge was part of his and the Co-Conspirators' scheme.

35.    Cathay is informed and believes, and thereon alleges, that the actions of Nelson and the Co-Conspirators, including fraudulent transfers and concealment of assets and providing false financial statements to Cathay, took place at a time when Gryphon and Nelson were experiencing financial difficulties, while Gryphon was requesting and ultimately obtaining credit extensions and/or renewals from Cathay.  Cathay is informed and believes, and thereon alleges, that Nelson owed a duty to Cathay disclose the true state of affairs, including his and his Co-Conspirators' scheme to hinder, delay, and/or defraud Cathay.  Cathay is informed and believes, and thereon alleges, that such actions gave rise to a debt by Nelson to Cathay—by operation of California law. Cathay is informed and believes, and thereon alleges, that the total assets concealed and/or transferred by the Co-Conspirators meets or exceeds the amounts due and owing by Nelson to Cathay.

**Nelson and Andrew's Scheme to Divert Gryphon's Toy Sales to Toyco**

36.    Cathay is informed and believes, and thereon alleges, that although Gryphon was a mobile power bank company, not a toy company, Nelson used Gryphon as a corporate shell through which he could run a toy business.  Cathay is informed and believes, and thereon alleges, that once Gryphon and Nelson started experiencing financial difficulties caused, in part, by Gryphon's plummeting sales of its portable power bank technology, Nelson and Andrew conspired to conceal Gryphon's lucrative toy sales by shifting those sales to Toyco—an entity that Nelson and Andrew formed on February 1, 2019.  Nelson and Andrew's scheme to shift Gryphon's toy sales to Toyco was intended to prevent Cathay from ultimately collecting the amounts owed by Gryphon and Nelson under the Loan Documents.  Nelson's providing Cathay with false financial statements and then later filing chapter 7 bankruptcy was also a part of this scheme.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## FIRST CLAIM FOR RELIEF

### For Determination that Nelson's Debt to Cathay is

### Nondischargeable Under 11 U.S.C. § 523(a)(2)(A)

37.    Cathay incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 36 as though set forth in full.

38.    Cathay is informed and believes, and thereon alleges, that Nelson, with the aid of the Co-Conspirators, engaged in a scheme to conceal and transfer Nelson's assets, as well the Collateral, by using Nelson's Entities and those of his family members as a corporate shell game for the purpose of deceiving Cathay.  This fraudulent scheme was designed and intended by Nelson and his Co-Conspirators to prevent Cathay from (a) realizing Nelson's defaults under the Loan Documents, (b) giving default and accelerating the debt, and (c) ultimately collecting from Nelson on his defaulted guaranty obligations. This fraudulent scheme was also designed and intended by Nelson and his Co-Conspirators to "buy time," while inducing Cathay to grant credit extensions, during which time Nelson could hide his assets in advance of and in preparation for filing chapter 7 bankruptcy.  This fraudulent scheme was effectuated by Nelson and his Co-Conspirators at a time when Nelson was, in fact, in default under the terms of the Loan Documents, but which actions and default was itself actively concealed by Nelson and the Co-Conspirators while they executed their scheme.

39.    At all relevant times, Nelson owed a continuing and affirmative duty to Cathay to disclose to Cathay the existence of this fraudulent scheme and all of the facts underlying such scheme.  Cathay is informed and believes, and thereon alleges, that Nelson has continued, even post-bankruptcy, to actively conceal this fraudulent scheme—including concealing valuable estate assets from Cathay and the chapter 7 trustee.

40.    Nelson specifically intended, at all times while he was effectuating this fraudulent scheme, that Cathay rely upon his words, conduct, statements, actions, and omissions.

41.    Cathay did, in fact, rely upon Nelson's words, conduct, statements, actions, and omissions which form the basis of Nelson's fraudulent scheme against Cathay.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

42.     Cathay's reliance on Nelson's words, conduct, statements, actions, and omissions was reasonable and justified.  By all outward reasonable appearances, there was no reason for Cathay to believe that Nelson was being anything other than forthright with Cathay.  But, in fact, Nelson and the Co-Conspirators were fleecing Gryphon and shedding Nelson of his assets for their own benefit.  Nelson's chapter 7 bankruptcy, and indeed his discharge, is part of this scheme.

43.     Cathay is informed and believes, and thereon alleges, that Nelson's scheme includes having the Co-Conspirators, shield such his assets until Nelson emerges from chapter 7 bankruptcy.  Such scheme and actions and omissions gave rise to an obligation by Nelson, including by way of damages arising by operation of California law—all of which constitute liability on a claim of Cathay against Nelson.  Cathay is informed and believes, and thereon alleges, that this debt obligation by Nelson to Cathay arose at the moment Nelson engaged in such concealment and transfers of assets.  Cathay is informed and believes, and thereon alleges, that this debt obligation by Nelson to Cathay meets or exceeds the full amount of the Loan and Nelson's outstanding guaranty obligations, including attorney's fees and costs.

44.     Based on the allegations alleged herein, Cathay is entitled to entry of judgment against Nelson determining that Nelson is liable to Cathay for damages arising from and related to his fraudulent scheme of concealing and transferring his assets (and those of his Entities) with the aid of his Co-Conspirators.  Such damages include, but are not limited to, all outstanding principal, interest, fees, attorneys' fees and costs through the date of entry of judgment, owed by Nelson to Cathay under his Guaranty of the Loan.  Cathay also seeks a judicial determination of all such amounts as damages.  Cathay is entitled to a judgment that all such amounts are deemed to be nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### SECOND CLAIM FOR RELIEF

### For Determination that Nelson's Debt to Cathay is

### Nondischargeable Under 11 U.S.C. § 523(a)(2)(B)

45.     Cathay incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 36 as though set forth in full.

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT AND DENIAL OF DISCHARGE

46.     Cathay is informed and believes, and thereon alleges, that as early as 2017, but perhaps earlier, Nelson provided, or caused to be provided, to Cathay personal financial statements concerning his financial condition.  These financial statements contained material misrepresentations and omissions. Nelson provided such false financial statements to Cathay on an annual basis, with the last financial statement being signed by Nelson in November of 2020.  Each such false financial statement was signed by Nelson.  Each contained the following language:

> I (we) hereby affirm that the foregoing information contained in this financial statement is presented for the purpose of obtaining credit as of the date indicated and is true, complete and correct.  I understand Lender is relying on this statement of my financial condition in making loan(s) to me….

47.     Cathay relied upon these false financial statements and such reliance was reasonable.  Cathay had no reason to doubt the veracity of these financial statements.

48.     Nelson provided Cathay with false personal financial statements for the purpose of concealing his financial condition, assets, and asset-transfers from Cathay and preventing Cathay from immediately exercising its remedies under the Loan Documents.

49.     Based on the allegations alleged herein, Cathay is entitled to entry of judgment against Nelson determining that Nelson is liable to Cathay for damages arising from and related to his fraudulent scheme of providing false financial statements to Cathay for the purpose of concealing and transferring his assets (and those of his Entities), with the aid of his Co-Conspirators.  Such damages include, but are not limited to, all outstanding principal, interest, fees, attorneys' fees and costs through the date of entry of judgment, owed by Nelson to Cathay under his Guaranty of the Loan.  Cathay also seeks a judicial determination of all such amounts as damages.  Cathay is entitled to a judgment that all such amounts are deemed to be nondischargeable under 11 U.S.C. § 523(a)(2)(B).

### THIRD CLAIM FOR RELIEF

### For Determination that Nelson's Debt to Cathay is

### Nondischargeable Under 11 U.S.C. § 523(a)(4)

50.     Cathay incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 36 as though set forth in full.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

51.     At the point in time when Gryphon became insolvent (unable to meet its obligations as they mature and/or its liabilities exceeded its assets), Nelson, as its CEO and managing member, owed Cathay a fiduciary duty to administer Gryphon's assets for Cathay's benefit as a creditor of Gryphon.

52.     After Gryphon became insolvent, Nelson breached his fiduciary duty to Cathay by fraudulently misappropriating the assets of Gryphon for his own personal use and benefit, including by engaging in self-dealing and concealing and transferring the assets of Gryphon to and for the benefit of himself and others, including the Entities and the Co-Conspirators, and by failing to properly to account for such assets and proceeds.

53.     Based on the allegations alleged herein, Cathay is entitled to entry of judgment against Nelson determining that Nelson is liable to Cathay for damages arising from and related to his breach of fiduciary duties to Cathay including in connection with this fraudulent scheme of converting assets of Gryphon, including by concealing and transferring the assets of Gryphon to his Co-Conspirators, his Entities, and to entities owned by his Co-Conspirators.  Such damages include, but are not limited to, all outstanding principal, interest, fees, attorneys' fees and costs through the date of entry of judgment, owed by Nelson to Cathay under his Guaranty of the Loan. Cathay also seeks a judicial determination of all such amounts as damages.  Cathay is entitled to a judgment that all such amounts are deemed to be nondischargeable under 11 U.S.C. § 523(a)(4).

**FOURTH CLAIM FOR RELIEF**

**For Determination that Nelson's Debt to Cathay is**

**Nondischargeable Under 11 U.S.C. § 523(a)(6)**

54.     Cathay incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 36 as though set forth in full.

55.     Cathay is informed and believes, and thereon alleges, that Nelson converted the Collateral, including proceeds, at a time when Gryphon and Nelson were insolvent and in default of their obligations to Cathay under the Loan Documents and when Cathay had an immediate right to possession of the Collateral.  In particular, Nelson diverted the Collateral to his family members and the Co-Conspirators for the purpose of preventing Cathay from recovering these assets while

1   Gryphon and Nelson were in default under the Loan Documents.  During this same time, Nelson

2   actively concealed such defaults from Cathay by, among other things, providing materially false

3   financial statements to Cathay as a scheme to buy time to allow him to transfer the Collateral for

4   his personal benefit and for the benefit of his family members and the Co-Conspirators in the lead-

5   up to him filing chapter 7 bankruptcy.

6       56.    Cathay is informed and believes, and thereon alleges, that Nelson's actions in

7   transferring the Collateral while providing Cathay with false financial statements were intentional,

8   done without just cause or excuse, and in conscious disregard of Cathay's right to take possession

9   of the Collateral.  Cathay is informed and believes, and thereon alleges, that Nelson acted with the

10  intention and purpose of harming Cathay or with substantially certain knowledge that such harm

11  would occur to Cathay.  Cathay is informed and believes, and thereon alleges, that Nelson's

12  wrongful conduct was done knowingly, intentionally, willfully, maliciously, and with the intent to

13  vex, annoy, and harass Cathay and with the intent to harm Cathay's interest in the Collateral, all

14  with a conscious disregard for Cathay's rights in the Collateral to benefit himself and to harm

15  Cathay.

16      57.    Based on the allegations alleged herein, Cathay is entitled to entry of judgment

17  against Nelson determining that Nelson is liable to Cathay for damages arising from and related to

18  his fraudulent scheme of converting and concealing the Collateral for his own benefit and with the

19  aid of his Co-Conspirators.  Such damages include, but are not limited to, all outstanding

20  principal, interest, fees, attorneys' fees and costs through the date of entry of judgment, owed by

21  Nelson to Cathay under his Guaranty of the Loan.  Cathay also seeks a judicial determination of

22  all such amounts as damages.  Cathay is entitled to a judgment that all such amounts are deemed

23  to be nondischargeable under 11 U.S.C. § 523(a)(6).

**FIFTH CLAIM FOR RELIEF**

**For Denial of Nelson's Discharge**

**Under 11 U.S.C. § 727(a)(2)(A)**

27      58.    Cathay incorporates by reference and realleges each of the allegations set forth in

28  paragraphs 1 through 36 as though set forth in full.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

59.     Cathay is informed and believes, and thereon alleges, that Nelson transferred, removed, mutilated, or concealed or permitted to be transferred, removed, destroyed, mutilated, or concealed, his property within one year before filing chapter 7 bankruptcy.

60.     Cathay is informed and believes, and thereon alleges, that such actions were done by Nelson with the intent to hinder, delay, or defraud his creditors and the chapter 7 trustee.

61.     Based on the allegations alleged herein, Cathay is entitled to entry of judgment denying Nelson's discharge.

**SIXTH CLAIM FOR RELIEF**

**For Denial of Nelson's Discharge**

**Under 11 U.S.C. § 727(a)(2)(B)**

62.     Cathay incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 36 as though set forth in full.

63.     Cathay is informed and believes, and thereon alleges, that Nelson transferred, removed, mutilated, or concealed or permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the estate after the date of the filing of the petition.

64.     Cathay is informed and believes, and thereon alleges, that such actions were done by Nelson with the intent to hinder, delay, or defraud his creditors and the chapter 7 trustee.

65.     Based on the allegations alleged herein, Cathay is entitled to entry of judgment denying Nelson's discharge.

**SEVENTH CLAIM FOR RELIEF**

**For Denial of Nelson's Discharge**

**Under 11 U.S.C. § 727(a)(3)**

66.     Cathay incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 36 as though set forth in full.

67.     Cathay is informed and believes, and thereon alleges, that Nelson concealed, destroyed, mutilated, falsified, and/or failed to keep or preserve recorded information, including books, documents, records, and/or papers, from which his financial condition and/or business

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   transactions might be ascertained, and that such act or failure to act was not justified under all of

2   the circumstances of the case.

3        68.    In particular, Cathay requested extensive documents from Nelson in connection

4   with his Fed. R. Bankr. P., Rule 2004 examination, which documents related to the allegations set

5   forth in this Adversary Complaint.  In response, Nelson produced a handful of documents and

6   claimed that he did not have possession or access to the remainder.  No bank records were

7   provided, despite the fact that Nelson testified that he did in fact have online access to bank

8   records.  No transactional records were provided.  Nelson provided no records demonstrating how

9   he came to the valuations of his personal property or what his personal property consisted of.  No

10  records were provided concerning transfers of his personal property, although he testified that he

11  sold a gold Rolex in July of 2020.

12       69.    Nelson testified under oath at his Fed. R. Bankr. P., Rule 2004 examination that,

13  for various reasons, he did not have possession or access to the documents being sought by

14  Cathay.  Nelson confirmed that he personally does not maintain any books or records, or any

15  documents whatsoever, regarding the matters forming the basis of this Adversary Complaint,

16  including various undisclosed assets, fraudulent transfers, and concealment of assets.  And, when

17  presented with certain bank records that Cathay was able to obtain via subpoena, including

18  cancelled checks, Nelson lacked information and could not remember details or specifics

19  concerning those transactions.

20       70.    Nelson's lack of written records regarding the allegations in this Adversary

21  Complaint effectively prevents Cathay and the chapter 7 trustee from fully ascertaining Nelson's

22  financial condition.

23       71.    Based on the allegations alleged herein, Cathay is entitled to entry of judgment

24  denying Nelson's discharge.

25

26

27

28

**EIGHTH CLAIM FOR RELIEF**

**For Denial of Nelson's Discharge**

**Under 11 U.S.C. § 727(a)(4)(A)**

72.     Cathay incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 36 as though set forth in full.

73.     Cathay is informed and believes, and thereon alleges, that Nelson knowingly made one or more materially false oaths on his bankruptcy schedules, Statement of Financial Affairs, and in connection with his testimony given in this case including at his meetings of creditors and Fed. R. Bankr. P., Rule 2004 examinations, which he made for the purpose of deceiving Cathay and the chapter 7 trustee.

74.     Cathay is informed and believes, and thereon alleges, that Nelson intentionally omitted assets from his schedules and Statement of Financial Affairs, and gave false oaths and accounts in his sworn testimony given in this case, for the purpose of defrauding the chapter 7 trustee and Cathay.

75.     In particular, Cathay is informed and believes, and thereon alleges, that Nelson omitted (a) the Undisclosed Entities, (b) his sale of a Rolex watch in July 2020 from his bankruptcy schedules and Statement of Financial Affairs, and (c) potentially other assets, all for the purpose of defrauding his creditors and the estate.  These omissions were material.  These omissions relate to Nelson's business transactions and the estate and concern the discovery of assets, business dealings, and the existence and disposition of Nelson's property.

76.     Cathay is informed and believes, and thereon alleges, that certain of the Undisclosed Entities are generating value from online sales.  Cathay is informed and believes, and thereon alleges, that the Rolex is or was worth between $10,000.00 and $50,000.00 or more.

77.     In addition, Cathay is informed and believes, and thereon alleges, that although Nelson listed the Disclosed Entities, for each he stated that such entities were valueless and/or defunct since 2018.  Cathay is informed and believes, and thereon alleges, however, that some or all of such Disclosed Entities are not defunct and are, in fact, currently registered as active by the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  California Secretary of State and transacting significant business, including by way of online retail

2  sales.

3       78.    Cathay is informed and believes, and thereon alleges, that at the time Nelson signed

4  his bankruptcy schedules and Statement of Financial Affairs, he knew they were false and

5  incomplete.

6       79.    Cathay is informed and believes, and thereon alleges, that Nelson has also denied

7  that his interests in the Entities are valuable under oath during a Fed. R. Bankr. P., Rule 2004

8  examination.

9       80.    Based on the allegations alleged herein, Cathay is entitled to entry of judgment

10  denying Nelson's discharge.

**NINTH CLAIM FOR RELIEF**

**For Denial of Nelson's Discharge**

**Under 11 U.S.C. § 727(a)(5)**

14       81.    Cathay incorporates by reference and realleges each of the allegations set forth in

15  paragraphs 1 through 36 as though set forth in full.

16       82.    Cathay is informed and believes, and thereon alleges, that Nelson has failed to

17  explain satisfactorily losses of his assets and deficiency of assets to meet his liabilities.

18       83.    In particular, Cathay is informed and believes, and thereon alleges, that as late as

19  November 2020, Nelson signed and provided financial statements to Cathay reflecting

20  $200,000.00 in cash, $1,600,000.00 in stocks and bonds, a $510,000.00 receivable, and

21  $150,000.00 in personal property assets.  However, about seven months later, Nelson filed

22  chapter 7 bankruptcy, reflecting that he is insolvent.  On his bankruptcy schedules, Nelson listed

23  only about $22,000.00 in total personal property assets.  In addition, Nelson's 2019 PFS, which

24  Nelson signed and provided to Cathay, reflects that Nelson had $500,000.00 in cash,

25  $1,600,000.00 in stocks and bonds, a $510,000.00 receivable, and $150,000.00 in personal

26  property assets.  And yet, again, Nelson's schedules do not reflect these personal property assets.

27       84.    Nelson's Statement of Financial Affairs reflects (a) no transfers of money or

28  property outside the ordinary course within two years of his filing bankruptcy, (b) no losses by

18

fire, theft, disaster, or gambling within one year of filing bankruptcy; (c) no gifts or charitable contributions over $600.00 within two years of filing bankruptcy; and (d) no other transfers of money or property in Nelson's lead-up to filing bankruptcy other than his payment of $4,600.00 to his bankruptcy counsel the day before he filed chapter 7.

85.     At Cathay's Fed. R. Bankr. P., Rule examination of Nelson, Cathay's counsel asked Nelson to explain the significant difference between what he had reported to Cathay, under oath, in his 2020 PFS and what he had listed on his bankruptcy schedules, again under oath. Nelson's explanation to Cathay was not that he concealed assets on his schedules or transferred assets prior to filing bankruptcy.  Instead, Nelson testified that the 2020 PFS and his bankruptcy schedules were both true and accurate.  Nelson testified that he had, in fact, listed and disclosed on his bankruptcy schedules all of the very same assets that he had listed and disclosed to Cathay on his 2020 PFS, but Nelson explained that the values of these items had simply decreased or that he was using different valuation methods, which accounted for the discrepancy.  This explanation does not constitute any semblance of an adequate answer for the apparent disposition of significant amounts of Nelson's personal property assets.

86.     Cathay is informed and believes, and thereon alleges, that Nelson is working in concert with and being aided and abetted by his family members, including his sister, Carol, to conceal and transfer his assets and hide them from Cathay and the chapter 7 trustee.

87.     When asked about these discrepancies, Nelson testified under oath that Carol prepared these personal financial statements for him.  But, Carol testified under oath at her own Fed. R. Bankr. P., Rule 2004 examination that she was essentially merely a typist who filled out the forms based in information provided, in part, by Nelson.

88.     Cathay sought documents related to Nelson's assets and liabilities from Carol, Gryphon's CFO and Nelson's sister.  In July 2021, Carol, as CFO of Gryphon, and through Gryphon's counsel, opposed Cathay's effort to obtain documents by filing a motion to quash the subpoena and moving for a protective order. *See* Dkt. 19.  But, at her Fed. R. Bankr. P., Rule 2004 examination, Carol testified that she had been terminated in mid-May 2021.  Carol never produced documents.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

89.    Based on the allegations alleged herein, Cathay is entitled to entry of judgment denying Nelson's discharge.

## PRAYER FOR RELIEF

WHEREFORE, Cathay prays for Judgment against Nelson as follows:

**On the First, Second, Third, and Fourth Claims for Relief:**

1.    That Nelson is indebted to Cathay for actual damages in an amount not less than all outstanding debt owed by Nelson under his Guaranty, plus post-judgment interest accruing upon and after the date of entry of judgment;

2.    That Nelson is indebted to Cathay for attorneys' fees, expenses, and other costs and charges of collection accrued after the entry of judgment until the Judgment is paid in full;

3.    That the obligations, including the Judgment, and any and all other claims, debts and damages proven at trial, owed by Nelson to Cathay arising from or relating to the allegations herein are determined to be not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and/or (a)(6).

**On the Fifth, Sixth, Seventh, Eighth, and Ninth Claims for Relief:**

1.    That Nelson's discharge be denied under 11 U.S.C. § 727.

**On All Claims for Relief:**

1.    For attorneys' fees and costs incurred in prosecuting this Adversary Complaint; and

2.    For such other and further relief as the Court deems proper.

DATED:  January 14, 2022        FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                MICHAEL J. GOMEZ
                                GERRICK M. WARRINGTON


                                By:    /s/ Gerrick M. Warrington
                                     _____
                                     GERRICK M. WARRINGTON
                                     Attorneys for Plaintiff CATHAY BANK

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000